## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BENJAMIN GOLDBERG, & MIKHAILA GOLDBERG, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiffs, | **COMPLAINT** |
| vs. | |
| AMERIHOME MORTGAGE COMPANY, LLC | |
| Defendants. | **JURY TRIAL DEMANDED** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiffs Benjamin Goldberg and Mikhaila Goldberg ("Plaintiffs"), by and through their undersigned counsel, hereby bring this Class Action Complaint ("Complaint") on behalf of themselves and all other individuals similarly situated against Defendant Amerihome Mortgage Company, LLC (hereafter "Amerihome" or "Defendant").

## <u>INTRODUCTION</u>

1.    This putative class action concerns Amerihome Mortgage's practice of misleading homeowners who were having difficulty making their mortgage payments during the COVID-19 pandemic.

2.    Plaintiffs and a class of similarly situated consumers in the United States (the "Class") entered into COVID-19 Payment Deferral Agreements ("Deferral Agreements") with Amerihome. Under the terms of the Deferral Agreements, Amerihome agreed to defer Plaintiffs'

mortgage payments to the end of their loan and to extend the loan's term without penalty. Amerihome represented and agreed that the Deferral Agreements would not change any other terms of the mortgage loan.

3.      In breach of the Deferral Agreements, Amerihome added the deferred payments to the outstanding principal balance on the loan.

4.      Amerihome's actions caused Plaintiffs and the Class to be overcharged for their deferred principal payments and ultimately increased the amounts paid under their mortgages.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. §1331 (because Plaintiffs allege violations of the Truth in Lending Act), pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) (because at least one Class member is of diverse citizenship from one of the defendants, there are 100 or more Class members, and the aggregate amount in controversy exceeds $5,000,000), and/or pursuant to 28 U.S.C. § 1367 (because the claims are so related to those over which the Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution).

6.      Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. § 1391 and 18 U.S.C. § 1965. Amerihome regularly conducts business in this District and a substantial part of the events giving rise to the claims asserted herein occurred in this District.

## PARTIES

7.      All relevant times, Plaintiffs Benjamin Goldberg and Mikhaila Goldberg have been citizens of the State of Pennsylvania, and residents of Berwyn, Pennsylvania.

8.      Defendant Amerihome Mortgage Company, L.L.C. is a limited liability company. Upon information and belief none of its members are citizens of Pennsylvania.[1]

## FACTUAL ALLEGATIONS

9.      On November 21, 2019, Plaintiffs Benjamin Goldberg and Mikhaila Goldberg refinanced their home in Berwyn, Pennsylvania by entering into a 15-year fixed amortized mortgage with an interest rate of 2.875%. The principal amount of the mortgage was $425,000.00. Payments for this loan were due the first of the month beginning January 1, 2020, with the last payment being due December 1, 2034.

10.     Plaintiffs' scheduled monthly principal and interest payments were $2,909.49. In addition, Plaintiffs were also required to pay approximately $695.95 in escrow payments for taxes and insurance to be paid on their behalf.

11.     This loan was assigned to Amerihome before Plaintiffs' first payment was due.

12.      In 2020, Plaintiffs paid their scheduled January, February, and March loan payments to Amerihome; however around April of 2020, Plaintiffs, as small business owners, began to worry about how the COVID-19 pandemic would affect their income in the coming months and years.

13.     Around April of 2020, Plaintiffs contacted Amerihome and inquired if it was offering any form of payment relief to its customers in light of the pandemic. Amerihome explained to Plaintiffs that they were eligible to enter into a Deferral Agreement that would temporarily defer payments on their loan. As Plaintiffs understood it, this Deferral Agreement

---

[1] In *Champagne v. Cenlar FSB*, No. 1:19-CV-20, 2019 WL 2519375, at *1 (E.D. Tex. June 18, 2019) Defendant Amerihome Mortgage Company, LLC alleged it was "a Delaware limited liability company, the sole member of which is Aris Mortgage Hold Company, LLC, which is also a Delaware limited liability company with one member: A-A Mortgage Opportunities, LP, a Delaware limited partnership." In *Simenz v. Amerihome Mortgage Company LLC*, 2:07CV00601 (E.D. Wis. July 3, 2007) Defendant Amerihome Mortgage Company, LLC alleged in its Notice of Removal it was a "limited liability company with three members, including Nicholas Del Torto, an individual citizen of Wisconsin, Kerry Pastore, an individual citizen of Illinois, and Peter Georgetsis, an individual citizen of Illinois."

would extend the life of the loan, and at the end of their deferral period Plaintiffs would simply resume payments on their loan, with the principal balance remaining at the same amount it had been before the deferral period began.

14.     At the time of this Deferral Agreement, the principal balance of Plaintiffs Benjamin Goldberg and Mikhaila Goldberg's loan was $419,312.62.

15.     Plaintiff's first Deferral Agreement deferred their April 2020 payment and remained in effect until June 30, 2020. The first Deferral Agreement was entered into Plaintiffs and Amerihome orally, over the phone. Plaintiffs received no initial documentation relating to this agreement.

16.     On June 15, 2020, Plaintiffs received a letter from Amerihome (hereafter "Forbearance Extension Letter.")

17.     According to the Forbearance Extensions Letter, it "confirm[ed] [Plantiffs'] acceptance of a forbearance plan extension." The letter indicated Plaintiff's had an "initial forbearance plan" in effect until June 30, 2020, and that the "forbearance plan extension [would] begin 07-01-2020 and continue through 09-30-2020."

18.     Following the Deferral period, Plaintiffs resumed their payments. Receipt of payment for the April 2020 payment was reflected on an Amerihome Loan Statement dated October 8, 2020. On this statement under "Transaction Activity," the statement reflects a payment in the amount of $3,605.44—the amount owed in principal, interest and escrow for April 2020—the entry related to this transaction reads "04/2020 PAYMT – THANK YOU."

19.     Accordingly, after Plaintiffs finished their Deferral period and paid their April 2020 payment, they believed their principal balance of their loan to be $417,407.73.

20.     On October 14, 2020, Plaintiffs received a letter entitled "Payment Deferral Agreement" from Amerihome. This letter represented that the Deferral Agreements would only "delay" or "defer" the payment of the past-due amounts and that "[t]he payment deferral will not change any other terms of your mortgage."

21.     On November 10, 2020, Plaintiffs paid an amount requested as a "past due amount" $1,683.89, although the cause of this past due amount is unclear.

22.     On November 13, 2020, Plaintiff made a payment in the amount of $3,605.33. This amount was credited as the November payment.

23.     On December 28, 2020, Plaintiffs made a payment in the amount of $3,751.86, credited as the January 2021 payment. According to their monthly statement, no amount was due until February 1, 2021.

24.     Based on their payments made, Plaintiffs believed their loan principal loan balance to be approximately $411,582.61 at the end of 2020. However, when Plaintiffs attempted to refinance the loan in January of 2020, they were shocked to discover that the outstanding principal balance on the mortgage was claimed to be more than $421,000.

25.     On January 11, 2020, Plaintiff Benjamin Goldberg was advised by a third-party loan servicer at Advisors Mortgage Group, LLC that this discrepancy was due to an unspecified "deferred balance" on Plaintiffs' mortgage.

26.     On February 2, 2020, Benjamin Goldberg contacted Amerihome for an explanation as to the discrepancy in the balance.

27.     According to Amerihome, the increased balance reflected $17,456.94 in past due principal and interest payments that were deferred for May through October of 2020, as well as $1,683.89 in "other past-due amounts."

28.    This made Plaintiffs aware for the first time that instead of "pausing" their loan during the Deferment Agreement, Amerihome had increased the principal balance owed because of the deferment, fundamentally changing the terms of their mortgage loan.

29.    This lack of transparency meant that when Plaintiffs ultimately refinanced their loan on February 10, 2020, although their principal balance should have been no more than $409,631.59 (in light of the $15,368.41, in principal payments they had made towards their loan) the total payoff amount was $420,742.30.

## CLASS ACTION ALLEGATIONS

30.    **Class Definition**. Plaintiffs bring this action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class: All persons in the United States who entered FNMA COVID-19 Payment Deferral Agreements with Amerihome; and who had their total deferred payments added to the outstanding principal balance on their mortgage loans. The Class Period is based on the applicable statutes of limitations for breach of contract claims and TILA claims.

31.    **15 U.S.C. § 1639g Subclass Definition**: Plaintiffs also bring this action on behalf of the following Subclass: All persons in the United States (a) who entered FNMA COVID-19 Payment Deferral Agreements with Amerihome; (b) who had their total deferred payments added to the outstanding principal balance on their mortgage loans; and (c) who, as a result, received an inaccurate payoff statement from Amerihome; at the time they refinanced or paid off their mortgage loans (the "15 U.S.C. § 1639g Subclass"). The Class Period is one year from the filing of this Complaint to the present.

32.    **Pennsylvania Subclass Definition**. Plaintiffs also bring this action on behalf of the following Pennsylvania Subclass: All persons in the State of Pennsylvania who entered FNMA COVID-19 Payment Deferral Agreements with Amerihome and who had their total

deferred payments added to the outstanding principal balance on their mortgage loans (the "Pennsylvania Subclass"). The Class Period is three years from the filing of this Complaint to the present.

33.    The 15 U.S.C. § 1639g Subclass and the Pennsylvania Subclass are referred to collectively as the "Subclasses."

34.    Excluded from the proposed Class and Subclasses are: (a) Defendant and its agents, officers, directors, parent companies, subsidiaries, and affiliates; (b) counsel representing Plaintiffs and any person employed by counsel; and (c) any judicial officers assigned to this case and their staff.

35.    Plaintiffs reserve the right to revise the definition of the Class and Subclasses based upon subsequently discovered information.

36.    **Numerosity:** While the exact number of the members of the Class and Subclasses are unknown to Plaintiffs at this time, membership in the Class and Subclasses may be ascertained from the records maintained by Amerihome. At this time, Plaintiffs are informed and believe that the Class and Subclasses includes thousands of members. Therefore, the Class and Subclasses are sufficiently numerous that joinder of all members in a single action is impracticable under Fed. R. Civ. P 23(a)(1), and the resolution of their claims through a class action will be of benefit to the parties and the Court.

37.    **Ascertainability:** The names and addresses of the members of the Class and Subclasses are contained in Amerihome's records. Notice can be provided to the members of the Class and Subclasses through direct mailing, publication, or otherwise using techniques and forms of notice similar to those customarily used in consumer class actions arising under state and federal law.

7

38.     **Common Facts:** Common facts exist as to all members of the Class and Subclasses and predominate over any issues affecting individual members. The common facts include the following:

    a.  Plaintiff and the members of the Class and Subclasses entered into Deferral Agreements with Amerihome.

    b.  The terms of the Deferral Agreements were substantively uniform with the exception of the amounts of the deferred payments.

    c.  Amerihome's standard practice was to add the deferred payments to the outstanding principal balance on the mortgage loan.

    d.  Amerihome sent Plaintiffs and the Class and Subclasses periodic mortgage statements that contained an inaccurate and inflated outstanding principal balance in violation of TILA.

    e.  Amerihome sent inaccurate payoff statements to Plaintiffs and the 15 U.S.C. §1639g Subclass as a result of its practice of adding the total deferred payments to the outstanding principal balance on the mortgage loans.

    f.  Plaintiffs and the Class and Subclasses relied on the accuracy of Amerihome's mortgage statements when making their monthly mortgage payments.

    g.  Plaintiffs and the 15 U.S.C. § 1639g Subclass relied on the accuracy of Amerihome's payoff statements when paying off or refinancing their mortgage loans.

39.     **Common Questions of Law:** Common questions of law exist as to all members of the Class and Subclasses and predominate over any issues solely affecting individual members. The common questions of law include, but are not limited to:

a. Whether Amerihome's practice of adding the deferred payments to the outstanding principal balance on the mortgage loan constitutes a breach of Amerihome's Deferral Agreements.

b. Whether Amerihome violated TILA by sending periodic mortgage statements that contained inaccurate principal balances.

c. Whether Amerihome violated TILA by sending Plaintiffs and the 15 U.S.C. §1639g Subclass inaccurate payoff statements that included inflated principal balances.

d. Whether Plaintiffs and the Class and Subclasses are entitled to damages and restitution.

e. Whether Plaintiffs and the Class and Subclasses are entitled to statutory damages.

f. Whether Plaintiffs and the Class and Subclasses are entitled to an award of reasonable attorneys' fees and costs.

40. **Typicality:** Plaintiffs' claims are typical of the Class and Subclasses. Plaintiffs have been subjected to the same wrongful business practice as the Class and Subclasses in that Amerihome wrongfully increased the principal balance on their mortgage loan by the total amount of the deferred payments. Plaintiffs' claims are also typical of the 15 U.S.C. § 1639g Subclass in that they received an inaccurate payoff statement as a result of Amerihome's practice of adding the total amount of the deferred payments to the principal balance on the mortgage loans.

41. **Adequacy:** Plaintiffs will fairly and adequately represent and protect the interests of the Class and Subclasses as required by Fed. R. Civ. P. 23(a)(4). Plaintiffs are adequate representatives of the Class and Subclasses because they do not have any interests that are

adverse to the interests of the Class and Subclasses. Plaintiffs are committed to the vigorous prosecution of this lawsuit, and to that end, Plaintiffs have retained counsel who are competent and experienced in handling class action litigation on behalf of consumers, including claims against financial institutions.

42.    Plaintiffs' interests are co-extensive with, and not antagonistic to, those of the absent members of the Class and Subclasses. Plaintiffs will undertake to represent and protect the interests of the absent members of the Class and Subclasses.

43.    Plaintiffs have engaged the services of the undersigned counsel. Counsel is experienced in complex consumer class action litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiffs and the absent members of

the Class and Subclasses.

44.    **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of the claims asserted in this action under Fed. R. Civ. P. 23(b)(3) because: (a) the members of the Class and Subclasses do not have an interest in individually controlling the prosecution of separate actions; (b) there is no pending litigation concerning the controversy already begun by the Class and Subclasses; (c) it is desirable to concentrate the litigation of the claims in this particular forum; and (d) there will be no difficulties in managing this case as a class action. The superiority requirement is satisfied because a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.

45.    **Predominance:** Class action status is warranted under Fed. R. Civ. P. 23(b)(3) because questions of law or fact common to the Class and Subclasses predominate over questions affecting only individual members. The interests of the members of the Class and Subclasses in individually controlling the prosecution of separate actions are theoretical and not practical. Prosecution of this action through Class Representatives would be superior to individual lawsuits. Plaintiffs are not aware of any difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

**COUNT ONE**
**BREACH OF CONTRACT**
**(On Behalf of Plaintiffs and the Class and Subclasses)**

46.    Plaintiffs hereby repeat, reallege and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

47.    Plaintiffs bring this claim on behalf of themselves and the members of the Class and Subclasses, Plaintiffs and the members of the Class and Subclasses entered into Deferral Agreements relating to their mortgage loans with Amerihome.

48.     Under the terms of the Deferral Agreements, Amerihome agreed to bring Plaintiffs' and the Class's mortgages current and delay repayment of certain past-due monthly principal and interest payments, as well as other amounts advanced by Amerihome as part of their missed payments.

49.    Amerihome further agreed that the deferred payments would not accrue interest, and that Plaintiffs and the Class and Subclasses would not be responsible for paying the deferred payments until "the maturity date of the mortgage or earlier upon the sale or transfer of the property, payoff of the mortgage loan, or the date the interest-bearing principal balance is paid in

full." Amerihome represented and agreed that "[t]he payment deferral will not change any other terms of your mortgage."

50.     In breach of the Deferral Agreements, Amerihome added the total deferred payments to the outstanding principal balance on the mortgage loan. This improperly increased the total amount of their mortgages.

51.     In addition, members of the Class and Subclasses who subsequently paid deferred amounts early (i.e., before the end of the loan) were double-charged interest on their deferred payments.

52.     Plaintiffs and the members of the Class and Subclasses actually and substantially complied with their contractual obligations under the Deferral Agreements unless such obligations were otherwise excused as a matter of fact or law.

53.     Plaintiffs and the members of the Class and Subclasses were harmed, suffered out-of-pocket loss, and did not receive the benefit of their bargains because Amerihome (a) wrongfully increased the principal balances on their mortgage loans; and (b) collected those inflated amounts when Plaintiffs and the Class and Subclass made subsequent payments on their mortgage loans and/or when they paid off or refinanced their mortgage loans.

54.     Amerihome is liable to Plaintiffs and the Class and Subclasses for the damages they suffered as a result of Amerihome's breaches of the Deferral Agreement.

**COUNT TWO**
**VIOLATION OF THE TRUTH-IN-LENDING ACT ("TILA")**
**15 U.S.C. § 1638(f); 12 C.F.R. § 1026.41(d)(7)(i)**
**(On Behalf of Plaintiff and the Class and Subclasses)**

55.     Plaintiffs hereby repeat, reallege and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

56.     Plaintiffs bring this claim on behalf of themselves and the members of the Class and Subclasses. 15 U.S.C. § 1638(f) of TILA, and its implementing Regulation Z, requires the creditor or servicer of the mortgage loan to provide periodic mortgage statements that accurately disclose the amount of the principal obligation under the mortgage. 12 C.F.R. § 1026.41(d)(7)(i). It further requires the mortgage statement disclose "the existence of any prepayment penalty … that may be charged." 12 CFR § 1026.41(d)(7)(iv).

57.     After Plaintiffs and the members of the Class and Subclasses entered into their Deferral Agreements, Amerihome added their total deferred payments to the outstanding principal balance on their mortgage loans. This improperly increased the principal obligation on their mortgage loans.

58.     Plaintiffs and the Class and Subclasses did not receive the proper disclosure materials related to their deferment—in fact, they did not receive any written disclosure until after the deferral had already occurred.

59.     Plaintiffs and the Class and Subclasses also received periodic mortgage statements that disclosed inaccurate and inflated principal obligations on their mortgage loans. The statements further failed to disclose that Plaintiffs and the Class and Subclasses would be charged a prepayment penalty if they paid the deferred amounts early.

60.     Plaintiffs and the Class and Subclasses made payments to Amerihome in reliance on the inaccurate mortgage statements and/or inaccurate payoff statements, and suffered out-of-pocket losses as result of Amerihome's violations of TILA.

61.     Further, the inaccurate disclosures in the mortgage statements and payoff statements, in and of themselves, harmed Plaintiffs and the Class and Subclasses, because they did not provide accurate information for financial planning purposes.

62.     Pursuant to 15 U.S.C. § 1640(a), Plaintiffs, on behalf of themselves and the Class and Subclasses, hereby seek the sum of their actual damages, plus statutory damages in an amount to be determined at trial.

63.     With respect to the statutory damages, if this case is certified as a class action, then Plaintiffs, on behalf of themselves and the Class and Subclasses, seek statutory damages in the amount of $1,000,000.00 for Amerihome's violation of 12 C.F.R. § 1026.41(d)(7)(i) (sending mortgage statements with inaccurate outstanding principal balances) and an additional $1,000,000.00 for Amerihome's separate violation of 12 C.F.R. § 1026.41(d)(7)(iv) (sending mortgage statements that fail to disclose pre-payment penalties). Plaintiffs, on behalf of themselves and the 15 U.S.C. § 1639g Subclass, further seek an award of an additional $1,000,000.00 in statutory damages based on Amerihome's failure to provide accurate payoff statements in violation of TILA.

64.     Plaintiffs, on behalf of themselves and the Class and Subclasses, further seek their reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1640(a)(3).

65.     If this case is not certified as a class action, then Plaintiffs seek their actual damages plus statutory damages of not less than $400 or greater than $4,000 for each inaccurate mortgage statement and payoff statement provide to them by Amerihome. Plaintiffs further seek their reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1640(a)(3).

**COUNT THREE**
**VIOLATION OF THE PENNSYLVANIA**
**"UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW"**
**73 P.S. § 201–1, *et seq.* ("UTPCPL").**
**(On Behalf of Plaintiffs and the Pennsylvania Subclass)**

66.     Plaintiffs hereby repeat, reallege and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

14

67.     Plaintiffs bring this claim on behalf of themselves and the members of the Pennsylvania Subclass.

68.     The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201–1, *et seq.*, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce, including but not limited to "[e]ngaging in fraudulent conduct which creates a likelihood of confusion or misunderstanding," 73 P.S. § 201–2(4)(xxi), and "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions." *Id.* at (xi).

69.     Amerihome falsely misrepresented to Plaintiffs and members of the Pennsylvania Subclass that they would be able to "pause" their monthly mortgage payments for a time period and then resume their payments after the end of the deferral period without penalty.

70.     Amerihome misrepresented the character, extent, and amount of Plaintiffs' debt, preventing Plaintiff and members of the Pennsylvania Subclass from making an informed decision regarding their finances.

71.     Plaintiffs only agreed to the Deferral Agreement because it was presented by Amerihome as a COVID assistance plan. Plaintiffs believed taking part in this program would ultimately decrease their mortgage payments. However, Amerihome mispresented that its Deferral Agreements would only "delay" or "defer" the payment of the past-due amounts and the Deferral Agreement ultimately cost Plaintiffs more than they otherwise would have paid in loan payments.

72.     In light of Amerihome's representations, it was improper for Amerihome to add the total amount of the "past-due monthly payments" to the outstanding principal balance.

73.    Through Amerihome's failure to disclose that it would be increasing the principal balance owed as a result of the payment deferral, it steered borrowers facing financial hardship into forbearance rather than exploring more appropriate repayment options in order to profit off of the deferred payments.

74.    In later written representations, Amerihome alleged "[t]he payment deferral will not change any other terms of your mortgage."

75.    Amerihome uniformly failed to disclose that it intended to add the total deferred payments to the outstanding principal balance on their mortgage loans. which would have the effect of overcharging Plaintiffs and the Pennsylvania Subclass for their past-due principal payments and increasing their mortgage loans.

76.    Amerihome had a duty to disclose the information set forth in the preceding paragraph above because it is contrary to its affirmative representations that Amerihome made to Plaintiffs and the Pennsylvania Subclass, including but not limited to its representation that "[t]he payment deferral will not change any other terms of your mortgage." Without the disclosure of the aforementioned information, this statement is misleading because Amerihome's practice of adding the total deferred payments to the principal balance does, in fact, change the terms of the mortgage by increasing the amount of the mortgage.

77.    Amerihome further had a duty to disclose this information because it had superior and exclusive knowledge that it would add the total deferred payments to the principal balance if Plaintiffs and the Pennsylvania Subclass entered the Deferral Agreements.

78.    Amerihome further violated the UTPCPL by sending periodic mortgage statements which contained inaccurate and inflated principal balances for the mortgage loans and

failed to disclose the borrower would be charged a prepayment penalty if they paid off the deferred amounts early.

79.    Amerihome knew and understood that Plaintiffs and the Pennsylvania Subclass would rely on the accuracy of the periodic mortgage statements when making their mortgage payments and/or paying off their mortgage loans. Amerihome further sent inaccurate payoff statements to Plaintiffs and other members of the Pennsylvania Subclass.

80.    The aforementioned misrepresentations and omissions are material because the fact that Amerihome would increase the principal balance on the mortgage loans would be important to a reasonable person's decision regarding whether or not to enter into a Deferral Agreement.

81.    Amerihome intended for consumers to rely on their representations and omissions in order to induce consumers, including Plaintiffs and the Pennsylvania Subclass to enter the Deferral Agreements and make overpayments on their mortgages.

82.    As a result of the foregoing acts and omissions, Plaintiffs and the Pennsylvania Subclass entered into the Deferral Agreements and paid more money than they should have paid under their mortgage loans.

83.    Based on the foregoing, Plaintiffs and the Pennsylvania Subclass are entitled to recover damages and restitution of all overcharges, together with appropriate penalties, as well as reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter a judgment against Amerihome and in favor of Plaintiffs and the members of the Class and Subclasses and award the following relief:

1. An order certifying this lawsuit as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, appointing Plaintiffs as the representatives of the Class and

Subclass, and appointing Plaintiffs' counsel as Class Counsel for the Class and Subclasses;

2. An award to Plaintiffs and the members of the Class and Subclasses of all appropriate relief, including actual damages, restitution and disgorgement of all improper charges of principal and interest and any other amounts;

3. An award of statutory damages to Plaintiffs and the Class and Subclasses under TILA;

4. An award of reasonable attorneys' fees;

5. An award of all costs for prosecuting the litigation, including expert fees;

6. An award of pre- and post-judgment interest; and

7. An order granting any such additional relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury as to all claims in this action so triable.

Dated: January 10, 2022                                    Respectfully submitted,

By: *s/Nicholas J. Guiliano*
Nicholas J. Guiliano (PA Bar. No. 76190)
GUILIANO LAW GROUP, P.C.
1700 Market Street, Suite 1005
Philadelphia, PA 19103
(215) 413-8223
Nick@nicholasguiliano.com

*Attorneys for Plaintiffs and the Proposed Class*

**OF COUNSEL:**

PEIFFER WOLF CARR KANE & CONWAY
Daniel B. Centner (will seek admission *pro hac vice*)
Korby Kazyak (will seek admission *pro hac vice*)
1519 Robert C. Blakes Sr. Dr.
New Orleans, LA 70130
504-523-2434
dcentner@peifferwolf.com